IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN P. MESSNER                    CIVIL ACTION

v.                                         NO. 15-5427

USA TECHNOLOGIES, INC., et al

### MEMORANDUM

**KEARNEY, J.**                                                                   **September 19, 2016**

      Consistent with the Private Litigation Securities Reform Act and the Federal Rules of Civil Procedure, we require shareholders filing securities fraud class actions to have fully performed good faith due diligence before alleging a defendant company and its officers engaged in securities fraud. When we find the shareholder's amended complaint does not sufficiently allege *scienter*, we dismiss the amended complaint and the shareholder may appeal our dismissal. Under Rule 60(b), we consider opening a dismissal order, even during the pendency of his appeal, when the shareholder can point to "newly discovered" evidence and demonstrates the extent of his pre-filing efforts to find this newly discovered evidence before our dismissal. When, as here, the shareholder allegedly finds facts publicly known before he filed suit and now asks us to vacate our dismissal order because this pre-filing public information is "newly discovered" to him, we will not vacate our earlier order dismissing his amended complaint.

### I.    Background

      On October 1, 2015, shareholder Steven P. Messner ("Messner") sued USA Technologies ("Company") and its officers Stephen P. Herbert, David M. DeMedio, and James Duncan Smith for violating §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934, as well as Rule 10b-5, by making materially false and misleading statements regarding the Company's: 1) accounting

practices and procedures concerning bad debt expenses; and, 2) the adequacy and efficacy of internal controls over financial reporting, business, operation, and compliance policies. On January 19, 2016, Messner amended his complaint expanding his allegations. On April 13, 2016, after oral argument, we granted the Defendants' motion to dismiss the Amended Complaint because Messner failed to plead *scienter* necessary under the Private Litigation Securities Reform Act.[1] On May 13, 2016, Messner timely appealed and our Court of Appeals scheduled briefing on his appeal for this Fall.

On August 16, 2016, Messner moved for relief from our April 13, 2016 dismissal order and for leave to file a Second Amended Complaint. Messner seeks to plead facts based on purportedly newly discovered evidence, and now asks us to vacate our April 13, 2016 dismissal under Federal Rules of Civil Procedure 60(b)(2) and 60(b)(6).

On September 6, 2016, having found Messner's motion raised a substantial issue, we ordered Messner to notify the circuit clerk under Federal Rule of Civil Procedure 62.1(b) and Federal Rule of Appellate Procedure 12.1.[2] Messner timely filed a notice of substantial issue in the Court of Appeals. The Court of Appeals has yet to grant us jurisdiction, but this does not affect our outcome because we deny Messner's motion under Federal Rule of Civil Procedure 62.1(a)(2).[3]

## II. Publicly filed fraud claims against the Company before filing the Complaint.

The Company provides wireless networking, cashless transactions, asset monitoring, and other value-added services to companies implementing self-service or unattended ticket markets.[4] The Company's main source of revenue is license and transaction fees resulting from connections to, as well as service provided by, its ePort Connect service.[5]

Messner now alleges the Company and individual defendants made materially false and misleading statements regarding the Company's connections by not disclosing they artificially inflated the number of connections they acquired. Messner claims *he learned* about the Company's artificial inflation of connections from a third amended complaint filed in an unrelated case in another federal district court a couple weeks after our April 13, 2016 Order.

These allegations are not new. Five months before Messner filed this action asserting fraud in the Company's internal controls in managing its operations, Universal Clearing Solutions, LLC ("Universal") filed state and common law fraud claims in the United States District Court for the District of Arizona against the Company, alleging the Company fraudulently inflated the number of its connections.[6] These allegations also relate to the operations and the Company's internal controls and reports on its operations.

On April 10, 2015, Universal filed an Amended Complaint, alleging "[the Company] entered into the Agreement [to do business with Universal] to further [its] executives' narrow personal interests and to deceive [its] investors and shareholders by creating a false impression of continued growth."[7] The Company's "growth platform is centered on an increase in customer base through increase in the number of 'connections.'"[8] The Company "routinely reports new 'connections' in their quarterly earnings and investor relations reports."[9] "[N]ew 'connections' is the main factor in calculation of [the Company's] executives' bonuses."[10] By April 10, 2015, public dockets in the Arizona district court included allegations the Company: "routinely inflates the number of new connections in various ways, including reporting connections with respect to customers who terminated, or never commenced, their relationship with" the Company[11]; "entered into the Agreement with Universal with the sole purpose to report thousands of new connections, even though [the Company] knew that those connections would never be

3

activated"[12]; "actually reported thousands of connections for Universal's sub-merchants as active, even though those merchants were never boarded on [its] platform"[13]; "failed to provide certain aggregation services to Universal's sub-merchants[14]; and Company Senior Vice President Michael Lawlor "tearfully admitted" the Company could not provide these services, and advised Universal to stop routing electronic payments through the Company.[15]

On May 2, 2016, Universal filed its Third Amended Complaint, alleging "on information and belief" the existence of an internal report evidencing the Company's intent to defraud ("Sagady Internal Report").[16] "[W]hen [the Company] began to expand its business beyond vending, Cary Sagady [("Sagady")], [the Company's] Senior Vice President . . . prepared a report that warned [the Company's] President and Board of Directors of [its] unpreparedness and inability . . . to expand its business to taxi and other verticals."[17] The Company's "President, Steven Herbert [], instructed Sagady to prepare another report that did not contain the negative prognosis."[18] "Sagady prepared the second report pursuant to Herbert's instructions, which report was presented to [the Company's] Board of Directors and shareholders."[19] These allegations expanded upon the lack of internal controls and reports for the Company's operations, but did not raise materially different issues.

### III. Messner's new allegations.

Messner filed a Complaint in October 2015 and Amended Complaint in January 2016 after the public disclosure of Universal's allegations relating to the Company's controls and misrepresentations concerning its connections. Messner focused both on financial fraud and inadequacy of the Company's internal controls relating to its operations. He could have investigated and then supported his accounting and financial fraud allegations, or otherwise plead alternative fraudulent conduct, based on Universal's April 2015 detailed allegations.

4

Messner's new allegations in his proposed Second Amended Complaint focus on fraud in representing the connections, as detailed in the Universal Amended Complaint filed in April 2015. Messner now alleges the Company and Defendants Herbert and DeMedio artificially doubled or tripled the Company's connections.[20] Messner alleges Defendant DeMedio asked Universal in May 2014 to place duplicate readers in its taxicabs even though they only required one reader.[21] Defendant DeMedio explained he made this request for the explicit reason of being able to report "better numbers" to the Company's Board of Directors and, in turn, for his own personal gain through financial bonuses.[22] Universal agreed, and the Company's connections increased by the thousands.[23] As Universal alleged, the Company requested other customers do the same, including Taximeter LLC ("Taximeter"), where the Company could not provide proper batching services, resulting in Taximeter returning 3,000 readers shortly after they received them August 2013.[24]

Messner also alleges facts as to the Company's inability to provide aggregation services as alleged by Universal. Between April and October 2014, the Company acquired a number of new customers, including Universal, under the pretense it would offer them aggregation services.[25] The Company and one of its executives represented to Universal the Company could provide aggregation services even though it could not.[26]

Messner now seeks to allege then-Company Vice President Mike Lawlor spoke with Universal in October 2014 at an electronic payment processing industry conference.[27] Mr. Lawlor admitted the Company did not have the appropriate technology in place to provide aggregation services, and the Company would not have the technology any time soon.[28]

Messner also alleges facts cited in Universal's Third Amended Complaint filed a couple weeks after our April 13, 2016 dismissal order. For example, Messner alleges Sagady prepared

the Sagady Internal Report in April 2014 for Defendant Herbert and the Company's Board of Directors, stating the Company was unable and unprepared to provide aggregation services.[29] In response, Defendant Herbert instructed Sagady to prepare another report omitting the warning and conclusion of inability to provide aggregation services.[30] Sagady complied and Defendant Herbert presented the revised report to the Company's Board of Directors.[31]

### IV. Analysis

Federal Rule of Civil Procedure 60(b)(2) allows us to relieve a party from a final judgment if there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."[32] The term "newly discovered evidence" refers to "evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant."[33]

Under Rule 60(b)(2), the new evidence (1) must be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial.[34] The moving party "bears a heavy burden" under Rule 60(b).[35] "Rule 60(b) motions are 'extraordinary relief which should be granted only where extraordinary justifying circumstances are present.'"[36] "Reasonable diligence requires that the movant acted with some promptness where the facts and circumstances would put a person of common knowledge and experience on notice that some evidence might exist."[37] The motion must specify how he sought the newly discovered evidence.[38]

The exercise of reasonable diligence includes a search of public records such as those on PACER that are not under seal.[39] In *Scutieri*, the defendant filed a motion for a new trial under Rule 60(b)(2) based on information the defendant discovered in court records from prior civil proceedings involving the plaintiffs' expert.[40] After trial, the defendant searched these records

and discovered inconsistencies undermining the expert's credibility.[41] The trial court denied the defendant's motion and the court of appeals found no abuse of discretion.[42] "Evidence that is contained in the public records at the time of trial cannot be considered newly discovered evidence."[43] Given the defendant had deposed the expert two months before trial, the defendant "had ample time to investigate [the expert's] background if his counsel had proceeded with due diligence."[44]

In *United States v. All Right, Title & Interest In Prop. & Premises Known As 710 Main St., Peekskill, N.Y.*,[45] the trial court dismissed the United States' *in rem* forfeiture action and ordered the property be returned to Jesse James Bunch—the only claimant opposing the forfeiture.[46] The United States moved for a new trial on the grounds of newly discovered evidence of a letter from the City of Peekskill to Mr. Bunch contradicting his testimony at trial.[47] The trial court held the United States failed to show why it could not have found the letter had it exercised due diligence.[48] The United States did not describe its attempts to secure the letter.[49] The letter had been available to the United States for years because it was a "public document" held by the City of Peekskill.[50] "[I]t should not be considered newly discovered evidence."[51]

In *Int'l Ctr. for Tech. Assessment v. Leavitt*,[52] the plaintiffs moved for relief from judgment based on newly discovered evidence after the court granted the defendants' motion to dismiss.[53] Some of plaintiffs' purported newly discovered evidence consisted of published articles.[54] The court found this evidence could not be considered newly discovered evidence because it was publicly available.[55] "Publicly available information cannot constitute newly discovered evidence."[56]

In *Perricone v. Corrections Lieutenant Clarke*,[57] after a jury verdict for the defendants on his excessive force claim, Perricone moved for a new trial based on newly discovered evidence

alleged in a civil rights complaint by Keith Robinson filed more than two years before Perricone's trial.[58] Mr. Robinson's complaint called into question the credibility of the officers involved in Perricone's case.[59] The court found Perricone failed to show he could not have discovered this evidence with the exercise of reasonable diligence.[60] "[E]vidence that is contained in the public records at the time of trial cannot be considered newly discovered evidence."[61] Although incarcerated, "[n]othing impaired his counsel from access to the documents of record in this court."[62]

Messner similarly fails to satisfy his burden of showing the exercise of reasonable diligence. He does not offer, and we could not find, authority for vacating our Order based on facts disclosed in the public docket months before filing this case. Messner claims he discovered the new evidence from a Third Amended Complaint filed against the Company in an unrelated action by Universal. Universal filed its Third Amended Complaint on May 2, 2016, twenty days following our April 13, 2016 Order granting Defendants' Motion to Dismiss. Messner explains it discovered "new information" of Defendants' *scienter* from the Third Amended Complaint, which he then confirmed through subsequent witness interviews.[63] Of significance to Messner is the allegation in the complaint "on information and belief" of the existence of the Sagady Internal Report advising the Company of its inability to provide aggregation services, and Herbert's instruction to prepare a new report without the negative prognosis.

Messner fails to explain steps he previously took to discover *scienter* evidence relating to Universal's lawsuit publicly filed in the Arizona federal district court several months before he filed this action. In Universal's Amended Complaint, filed more than a year before our April 13, 2016 Order, Universal alleged facts relevant to the Company's intent to fraudulently inflate the number of connections.[64] Universal plead the Company entered into a business relationship with

Universal "to further [the Company's] executives' narrow personal interests and to deceive [its] investors and shareholders by creating a false impression of continued growth."[65] The Company "routinely inflates the number of new connections in various ways, including reporting connections with respect to customers who terminated, or never commenced, their relationship with" the Company.[66] The Company "entered into the Agreement with Universal with the sole purpose to report thousands of new connections, even though [the Company] knew that those connections would never be activated."[67] These are the core facts.

These allegations in the public record in 2015 put Messner on notice of evidence as to Defendants' fraudulent inflation of connections and relatedly, Defendants' *scienter*.[68] The exercise of reasonable diligence, particularly in a securities fraud pleading, would have entailed further investigation into these allegations, as the Universal Amended Complaint had been a matter of public record five months before Messner filed this action and a year before our April 13, 2016 Order.[69] Messner does not explain, by affidavit or otherwise, the scope and extent of his pre-filing investigation based on the public allegations in Universal's Amended Complaint.[70]

Reviewing the Universal Amended Complaint should have prompted Messner to interview Universal witnesses. Such interviews may have led to multiple relevant discoveries, such as the Company's alleged request to Universal to use multiple readers. These interviews also could have led Messner to discover the information Universal relies upon in alleging "on information and belief" the existence of the Sagady Internal Report in its Third Amended Complaint. But Messner does not explain efforts made to interview Universal witnesses based on Universal's allegations of inflated connections. The exercise of reasonable diligence demanded this inquiry. We find Messner fails to satisfy his heavy burden under Rule 60(b)(2) of demonstrating he exercised reasonable diligence.

Messner also does not demonstrate information from the Universal Third Amended Complaint is not cumulative of information already on the public record from Universal's Amended Complaint. Messner's present efforts focus on alleged misrepresentations of the connections and aggregation services. Universal addressed these same issues five months before Messner filed suit. At a minimum, Messner could have alleged the Company's misconduct in representing connections based on the Universal lawsuit and subsequent investigation in either his complaint or amended complaint. Universal's Third Amended Complaint only adds facts to these same claims.

Nor does Messner satisfy his burden under Federal Rule of Civil Procedure 60(b)(6). Under Rule 60(b)(6), we may relieve a party from a final judgment for "any other reason that justifies relief."[71] This rule "should be used only in extraordinary circumstances."[72] Like Rule 60(b)(2), Rule 60(b)(6) "provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances."[73] This requires Messner make "a more compelling showing of inequity or hardship" than normally would be required to reopen a case under subsections (1) through (5).[74]

Messner fails to demonstrate exceptional circumstances warranting relief from judgment under Rule 60(b)(6). Messner argues he is entitled to relief because, in light of the new allegations of *scienter*, allowing our present judgment to stand would be unjust.[75] Finality in orders requires Messner show more than unfairness arising from an apparently lacking investigation. Every disappointed litigant would love another chance to plead when they discover facts they could have easily discovered in the public docket before they filed a lawsuit. Denying Messner's motion is not inequitable given his inability to offer any information about the scope of his prior investigation into the specific public allegations in the Universal Amended

Complaint and why he could not have included those specific public allegations in either his complaint or amended complaint.

## V. Conclusion

Messner seeks relief from our prior judgment dismissing his Amended Complaint. He does not satisfy his heavy burden under Federal Rule of Civil Procedure 60(b)(2) because he does not demonstrate he exercised reasonable diligence in investigating publicly filed fraud allegations against the Company. Nor does Messner meet his burden of demonstrating extraordinary circumstances warranting relief under Rule 60(b)(6). We deny Messner's motion for relief from judgment in the accompanying Order.

---

[1] (ECF Doc. No. 32.)

[2] (ECF Doc. No. 41.)

[3] We direct Messner to immediately advise the Court of Appeals of the entry of today's Order.

[4] (ECF Doc. No. 38-1 ¶ 25.)

[5] (*Id.* at ¶ 26.)

[6] Amended Complaint, *Universal Clearing Solutions LLC v. USA Technologies, Inc.*, No. 15-00036, (D. Az. Apr. 10, 2015), ECF Doc. No. 6.

[7] *Id.* at ¶ 83.

[8] *Id.* at ¶ 84.

[9] *Id.* at ¶ 85.

[10] *Id.* at ¶ 86.

[11] *Id.* at ¶ 87.

[12] *Id.* at ¶ 88.

[13] *Id.* at ¶ 89.

---

[14] *Id.* at ¶ 15. Aggregation services refers to providing processing services on a mass scale. (ECF Doc. No. 38-1, at ¶ 32.)

[15] *Id.* at ¶ 67–68.

[16] Third Amended Complaint at ¶ 94, *Universal Clearing Solutions LLC v. USA Technologies, Inc.*, No. 15-36, (D. Az. May 2, 2016), ECF Doc. No. 82.

[17] *Id.*

[18] *Id.* at ¶ 95.

[19] *Id.* at ¶ 96.

[20] (ECF Doc. No. 38-1, at ¶ 43.)

[21] (*Id.* at ¶ 44.)

[22] (*Id.*)

[23] (*Id.*)

[24] (*Id.* at ¶ 45.)

[25] (*Id.* at ¶ 36.)

[26] (*Id.*)

[27] (*Id.* at ¶ 42.)

[28] (*Id.*)

[29] (*Id.* at ¶ 35.)

[30] (*Id.*)

[31] (*Id.*)

[32] FED. R. CIV. P. 60(b)(2).

[33] *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (quoting *United States v. 27.93 Acres of Land, More or Less, Situate in Cumberland Cty., Com. of Pa. Tract No. 364-07*, 924 F.2d 506, 516 (3d Cir. 1991)).

[34] *Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995).

[35] *Id.* (quoting *Plisco v. Union R. Co.*, 379 F.2d 15, 17 (3d Cir. 1967)).

[36] *Id.* (quoting *Plisco*, 379 F.2d at 16).

[37] *S.E.C. v. Wojeski*, 752 F. Supp. 2d 220, 228 (N.D.N.Y. 2010).

[38] *See United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983) ("Given the feebleness of [movant's] proffer of 'due diligence,' . . . it was well within the district court's discretion to reject the explanations.").

[39] *See Scutieri v. Paige*, 808 F.2d 785, 794 (11th Cir. 1987). There is no case law contradicting this assertion.

[40] *Scutieri*, 808 F.2d at 793.

[41] *Id.* at 793–94.

[42] *Id.* at 794.

[43] *Id.*

[44] *Id.*

[45] 753 F. Supp. 121, 127 (S.D.N.Y. 1990).

[46] *All Right, Title & Interest In Prop. & Premises Known As 710 Main St., Peekskill, N.Y.*, 753 F. Supp. at 122.

[47] *Id.* at 125–26.

[48] *Id.* at 127

[49] *Id.*

[50] *Id.*

[51] *Id.* (citing *Scutieri*, 808 F.2d 785)

[52] 468 F. Supp. 2d 200 (D.D.C. 2007).

[53] *Int'l Ctr. for Tech. Assessment*, 468 F. Supp. 2d at 202.

[54] *Id.* at 207.

---

[55] *Id.*

[56] *Id.* (citing *Scutieri*, 808 F.2d at 794).

[57] No. 96-6248, 1999 WL 1067865 (E.D. Pa. Nov. 8, 1999).

[58] *Perricone*, 1999 WL 1067865 at *1–2.

[59] *Id.* at *1.

[60] *Id.* at *2.

[61] *Id.* (citing *Scutieri*, 808 F.2d at 794).

[62] *Id.*

[63] (ECF Doc. No. 38-3, p. 12.)

[64] Amended Complaint at ¶¶ 83–89, *Universal Clearing Solutions LLC v. USA Technologies, Inc.*, No. 15-00036, (D. Az. Apr. 10, 2015), ECF Doc. No. 6.

[65] *Id.* at ¶ 83.

[66] *Id.* at ¶ 87.

[67] *Id.* at ¶ 88.

[68] *See Wojeski*, 752 F. Supp. 2d at 228.

[69] *See Scutieri*, 808 F.2d at 794.

[70] *See Potamkin*, 697 F.2d at 493.

[71] FED. R. CIV. P. 60(b)(6).

[72] *Landano v. Rafferty*, 897 F.2d 661, 682 (3d Cir. 1990) (citing *Moolenaar v. Gov't of the Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987)).

[73] *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 273 (3d Cir. 2002) (internal quotation marks and citations omitted).

[74] *Landano v. Rafferty*, 897 F.2d 661, 682 (3d Cir. 1990) (citing *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1140 (D.C. Cir. 1988)).

[75] (ECF Doc. No. 38-3, p. 13.)